**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| In re:<br>CENERGY, LLC,<br>Debtor. | Case No. 23-11558<br>Jointly Administered<br><br>Chapter 11<br>Judge Thomas M. Lynch |
| In re:<br>CENERGY II, LLC<br>Debtor. | Case No. 23-11559 |
| In re:<br>CONSUMERS COOPERATIVE ASSOCIATION OF EAU CLAIRE<br>Debtor. | Case No. 23-11560 |

## MEMORANDUM DECISION

The three Debtors collectively operated 31 gas station convenience stores in the Eau Claire area in Western Wisconsin, but soon after filing their petition closed 13 of them, rejecting the leases. (Amended Disclosure Statement, ECF No. 203.)[1] Through their confirmed chapter 11 plan (the "Plan"), the three Debtors merged into the Reorganized Debtor, managed by Diversified Management Group, Inc., and with K. Michael Buck continuing as CEO of the Reorganized Debtor. (Confirmation Order, ECF No. 306.) The Plan anticipated that two properties would be sold and the Reorganized Debtor would continue to operate the remaining stores, making payments to creditors out of sale proceeds and post-confirmation revenue. Nine

[1] The U.S. Trustee filed duplicate versions of its motion to dismiss in all three jointly administered cases. All docket references herein are to the lead case, 23-11558.

months after confirmation, only one of the two contemplated sales had occurred, and the Reorganized Debtor had stopped filing quarterly reports and paying quarterly U.S. Trustee's fees. By all accounts, it had ceased operating.

The U.S. Trustee seeks dismissal of the case, which the Reorganized Debtor does not oppose. Only one party, KLC Financial Inc., opposes dismissal. KLC wants an explanation for what went wrong, speculating that there may have been "potentially recoverable transfers" to Diversified Management Group, while conceding there "has been no inquiry into the role of DMG in the debtor's financial situation." (Objection, ECF No. 354.) Instead of dismissal, KLC asks the Court to convert the case to chapter 7, requesting authority for itself to examine Diversified Management Group, Mr. Buck and the Reorganized Debtor under Rule 2004 before the Court rules on the U.S. Trustee's motion. (ECF No. 358.)

For the reasons stated herein – most notably that the confirmed Plan vested all property and causes of action in the Reorganized Debtor – KLC's objection will be overruled and its request for conversion will be denied. The U.S. Trustee's motion to dismiss will be granted, and KLC's request for examination under Rule 2004 will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor Cenergy, LLC ("Cenergy") filed its petition under chapter 11 of the Bankruptcy Code on September 1, 2023, together with affiliated entity Cenergy II, LLC ("Cenergy II"), and their owner Consumer Cooperative Association of Eau Claire ("CCA"). The three cases are jointly administered. The Court confirmed their chapter

11 plan on June 7, 2024. Creditor KLC Financial, Inc. ("KLC") initially objected to confirmation, but as the confirmation order notes, it withdrew that objection at the confirmation hearing. The confirmed Plan recognizes KLC's secured claim of $500,000, to be paid with interest at 6.0% per annum through monthly payments of $9,666.40 for 60 months. The remainder of KLC's claim is to be treated as unsecured. (EFC No. 306.) The Plan provides that KLC had "30 days from the Effective Date to amend its claim to reflect any reduction in the amount of its unsecured claim based upon post-petition payments and/or disposition of KLC's collateral abandoned during these Cases." (*Id.*) KLC did not file the amended claim provided for.

After that deadline had passed, the Reorganized Debtor filed its limited objection to the unsecured portion of KLC's claim. (ECF No. 331.) KLC responded to the objection. (ECF No. 339.) The docket indicates that Judge Furay heard and ruled on the objection, noting: "**OUTCOME:** Stipulated Order is anticipated. When received it is to be routed to alternate judge. If needed, contact court for further hearing to be assigned to alternate judge, for the claim objection." (ECF No. 342.)[2] However, no such proposed agreed order was ever filed. KLC did amend its proof of claim on September 9, 2024, and the Court finds the amendment mooted the Reorganized Debtor's objection with no further objection to the amended claim being filed. *See* 11 U.S.C. § 502(a) (claims for which a proof of claim is filed are deemed allowed unless and until a party in interest objects).[3]

[2] The case was reassigned to the undersigned on April 1, 2025. (ECF No. 350.)
[3] The confirmed Plan provided that general unsecured claims were to receive an estimated $530,000 from the remaining proceeds after sale of two properties, and quarterly excess cash from operations for three years. (ECF No. 306.)

Cenergy and Cenergy II were dissolved pursuant to the Plan which provides that all assets and liabilities "shall merge and vest" in CCA as Reorganized Debtor. (ECF No. 306.) Notably, the Plan addresses vesting of property and causes of action in the reorganized debtor as follows:

> **7.10 Debtors' Property after Confirmation.** Except as otherwise provided in the Plan, all property of the Debtors and their estates shall vest in the Reorganized Debtor as of the Effective Date, free and clear of all liens and encumbrances. As noted in Article 4 with respect to Class 5, all assets of Cenergy, LLC and Cenergy II, LLC shall merge and vest the Consumers Cooperative Association of Eau Claire as of the Effective Date. The Reorganized Debtor will execute or ratify any documents reasonably necessary to confirm the existence and continuation of all obligations of Cenergy and Cenergy II as to the Reorganized Debtor, provided such document(s) do not conflict with the terms of this Plan.
>
> . . . .
>
> **7.12 Preference, Fraudulent Conveyances, Other Avoidance Actions and Other Causes of Action.** All Causes of Action that are not otherwise compromised, settled, released or waived pursuant to the terms of this Plan are preserved and shall vest in the Reorganized Debtor. Confirmation of the Plan or its terms shall not preclude or estop the Reorganized Debtor from pursuing any claims of the Debtors or the estate against any of the Debtors' Creditors for offset or other Causes of Action. In addition, all Causes of Action of the Debtors against any Person for the recovery of preferences, fraudulent transfers or any other actions under chapter 5 of the Code that arose on or after the Petition Date vest on the Effective Date in the Reorganized Debtor. The actions so vested in the Reorganized Debtor under this section include without limitation any derivative action that any party may have as a right derivative of or from the Debtors.

(*Id.*) The Plan further discloses that:

> **7.05 Management of the Reorganized Debtor after the Effective Date.** Existing management, including the duly elected directors of the Reorganized Debtor, shall continue to manage the affairs of the Reorganized Debtor after the Effective Date.

> Diversified Management Group, Inc. will continue to manage the business of the Reorganized Debtor following the Effective Date subject to the discretion of the board of directors, with K. Michael Buck continuing as CEO of the Reorganized Debtor, and Jake Day continuing as Vice President of Finance of the Reorganized Debtor.

(*Id.*)

Section 8.07 of the Plan provides that the "Court may exercise jurisdiction to the full extent necessary to administer this Case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification." (*Id.*) The confirmation order states that "this Court shall retain jurisdiction to ensure that the purpose and intent of the Plan are carried out" and sets forth a non-exhaustive list of exemplar matters. (*Id.* at 6.) But this provision ends by cautioning that "Nothing contained herein shall limit the Court's discretion to abstain or decline to exercise jurisdiction over any matter described in the Plan, and if the Court exercises such discretion, any such matter may be heard before any State or Federal Court which may otherwise have competent jurisdiction over such matter." (*Id.* at 7.)

On March 20, 2025, the U.S. Trustee moved to dismiss the case under section 1112(b). (ECF No. 346, the "Motion to Dismiss.") His motion alleged that the Reorganized Debtor failed to file quarterly operating reports since confirmation, for the third and fourth quarters of 2024, and has not paid its quarterly fees.[4] The U.S.

[4] The exact amount could not be alleged by the U.S. Trustee because it lacked the Debtor's post-confirmation quarterly reports. (*Id.*, ¶ 11, n.1.) However, elsewhere in its motion the U.S. Trustee calculated this amount to be $9,137.49. (*Id.* at ¶ 20.)

Trustee asserts that "upon information and belief, there are no remaining assets available for administration," referencing communications with counsel for the Reorganized Debtor indicating that "the funds from the real estate sales were already disbursed to general unsecured creditors, as outlined in the Plan." (*Id.* at ¶ 24.) Therefore, the U.S. Trustee seeks dismissal rather than conversion, arguing that dismissal is in the best interest of creditors.

KLC objected to the Motion to Dismiss on April 10, 2025, (ECF No. 354, the "Objection"), arguing that conversion of the case to chapter 7 is in the best interests of creditors. In its Objection, KLC concedes that under the terms of the confirmed Plan all assets of the three Debtors "vest[ed] in CCA as the Reorganized Debtor," but then asserts, without more, that "All of the property of the Debtors are not vested in the reorganized debtor – including the equity interests that could be potentially be sold by a trustee to pay distributions to unsecured creditors." (*Id.* at ¶16.) KLC seems to be referring here to the equity interests of the Reorganized Debtor, having earlier referred to the Amended Disclosure Statement mentioning that under the Plan "the holders of equity interests in CCA shall retain their equity interests and all related rights and attributes on and after the Effective Date." (*Id.* at ¶13.) KLC does not explain, however, how interests *in* the Reorganized Debtor constitute assets *of* any of the Debtors' bankruptcy estates. KLC instead speculates that it "is unknown whether and how much assets and funds were transferred to the DMG who per the plan of reorganization was entrusted with the execution and management of the Debtor's plan of reorganization" and asks that at "a minimum, the disclosure of all potentially

recoverable transfers should be disclosed prior to the court making a determination of whether to convert of [sic] dismiss the bankruptcy case." (*Id.* at ¶18.)

The Court held a status hearing on the Motion to Dismiss on April 24, 2025, at which counsel for the Reorganized Debtor, the U.S. Trustee, KLC, and several creditors appeared. Counsel for the Reorganized Debtor did not contest the factual allegations in the Motion to Dismiss. He represented that one of the two properties to be sold under the Plan was sold in August 2024, with approximately $250,000 in proceeds distributed to unsecured creditors, but stated that a buyer for the other property could not be found and now it is believed that this property is worth less than the mortgage to Womity State Bank encumbering it. The Reorganized Debtor's counsel further represented that the Reorganized Debtor had ceased all operations by March 2025 and, with that being the case, it did not object to dismissal. Due to the vesting provisions in the Plan, the Reorganized Debtor did not believe there are any assets to administer were the case converted to chapter 7.

Highlighting the possible significance of the Plan's vesting provision, the Court continued the matter for oral argument on April 30, 2025. When, at the end of the April 24 hearing, counsel for KLC suddenly asked to take discovery under Rule 2004 before proceeding further. The Court indicated that it would not consider the oral motion and that KLC should file a written motion by the next day if it wanted the motion heard at the next status date. The U.S. Trustee consented to continuation of his Motion to Dismiss.

Despite its indication that it would file a written discovery motion, KLC did not file a Rule 2004 motion before the April 30th hearing. At that hearing, the U.S. Trustee cited precedent for the proposition that where confirmation of a plan vested all assets in the reorganized debtor there are usually no assets to be administered and little benefit to be obtained for creditors upon conversion. In support of its objection, counsel for KLC cited case law suggesting vesting does not necessarily preclude conversion if the plan or confirmation order contains language retaining jurisdiction. At the end of argument, the Court set a supplemental briefing schedule, giving KLC until May 14 to respond to the Motion to Dismiss and giving the U.S. Trustee until May 28 to file its reply. Noting that KLC had not filed its motion under Rule 2004, the Court also granted KLC until May 14 to file such a motion, cautioning that it should explain why it needs discovery at this late date.

KLC did not file its response brief. It did timely file a discovery motion under Rule 2004. (ECF No. 358, the "2004 Motion.") The 2004 Motion seeks discovery from Diversified Management Group and its CEO, K. Michael Buck, and from the Reorganized Debtor regarding:

a. What liens exist on the real estate, the valuations, and any offers to buy or sell, lease or loan;
b. Cenergy's post-confirmation revenue and expenses and net cash;
c. Amounts paid to DMG and Buck by Cenergy;
d. The sales of real property that were, in part, the funds to pay unsecured creditors;
e. Buck's and or DMG's, interest in any of the stores;
f. Why the stores are closed and in turn-key condition;
g. Disposition of any proceeds from any post-petition sale of assets;
h. Any transfers not in the ordinary course by Cenergy post-petition; and
i. Any bulk sales or transfers.

(ECF No. 358, ¶32.) The principal argument raised by KLC in the 2004 Motion appears to be that the Reorganized Debtor's inability to generate funds to comply with its payment obligations under the Plan must be due to mismanagement of the estate's funds and other assets. But the 2004 Motion furnishes little to no detail regarding its speculations, instead asking, "Where did the money go? Cenergy, DMG and Buck are not telling." (*Id.* at ¶12.) Its motion notes the Debtor's failure to file its post-confirmation quarterly reports and that an officer of a lender to KLC had visited ten of the Debtors' former convenience stores on April 24, 2025, and found them clean, empty of any inventory, and not operating. (ECF No. 358, Ex. 2.)

Apparently, KLC had taken pre-confirmation discovery with leave of court. The docket shows that the court granted KLC four motions to take 2004 examinations on April 30 and May 1, 2024. (See ECF Nos. 219, 220, 226, 227.) Attached to the 2004 Motion is a transcript of a May 17, 2024 deposition KLC took of Mr. Buck.

The 2004 Motion partially responds to the U.S. Trustee's arguments based on the Plan's vesting provision. KLC cites a Ninth Circuit opinion, *Pioneer Liquidating Corp. v. United States Tr. (In re Consol. Pioneer Mortg. Entities)*, 264 F.3d 803, 805 (9th Cir. 2001), for the proposition that where the plan or confirmation order provides for retention of jurisdiction "property can become property of the Chapter 7 estate upon conversion." (ECF No. 358 ¶45.)

Mr. Buck and DMG have objected to the 2004 Motion, characterizing it as "a preliminary fishing expedition in support of some undefined claims that KLC wishes to assert against either DMG and Buck." (ECF No. 361.) Buck and DMG further argue

that to the extent KLC seeks information from them regarding post-confirmation matters or to pursue post-confirmation claims against them, it can do so in another forum.

Notwithstanding KLC's failure to file its opposition brief as directed by the Court on April 30, the U.S. Trustee submitted a reply in support of its motion on May 23, 2025. (ECF No. 363, the "Reply Brief.") In it, the U.S. Trustee took no position on the 2004 Motion and, rather, restated its position that dismissal is in the best interests of creditors because there are no assets to administer in a converted chapter 7 case. It goes on to assert that creditors such as KLC can seek remedies from the Reorganized Debtor or other parties for breach of the Plan in state court or other forums, citing *Green Box NA Green Bay, LLC*, 579 B.R. 504, 511 (Bankr. E.D. Wis. 2017), and *In re 5431-33 S. Wabash, LLC*, 2020 Bankr. LEXIS 3460, 2020 WL 7214147 (N.D. Ill. Nov. 16, 2020) (where all assets vested in the reorganized debtor upon confirmation, dismissal rather than conversion to chapter 7 is generally in the best interest of creditors). The U.S. Trustee also distinguished the *Pioneer* decision as involving a liquidating trust rather than a reorganization. The Court ordered KLC to file a response to the U.S. Trustee's Motion and to the Reply Brief by no later than June 11, 2025, and continued the matters for further hearing. (Scheduling Order, ECF No. 364.) Again KLC did not file the response as directed by the May 28, 2025 order.[5]

[5] When asked about its failure to do so, KLC's attorney explained that he "did not understand" the Scheduling Order. (July 2, 2025 Hearing.) In reaching its decision here, the Court has taken into consideration the arguments presented in all of KLC's submissions.

## DISCUSSION

On request of a party in interest, after notice and a hearing, "the court shall convert a case . . . to chapter 7 . . . or dismiss a case . . . whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment . . . of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b).[6] "Cause" to dismiss or convert includes "unexcused failure to satisfy timely any filing or reporting requirement established by" the Bankruptcy Code or Rules, and "failure to pay any fees or charges required under chapter 123 of title 28." 11 U.S.C. § 1112(b)(4). Neither the Reorganized Debtor nor any other party has disputed that cause exists to dismiss or convert the case, and that the "unusual circumstances" exception in section 1112(b)(2) does not apply.

At issue is whether conversion or dismissal "is in the best interests of creditors and the estate." In this determination, the court "has broad discretion." *In re Hall*, No. 20-81572, 2022 Bankr. LEXIS 1869, at *9 (Bankr. N.D. Ill. July 6, 2022) (citing *In re Bartle*, 560 F.3d 724, 730 (7th Cir. 2009)). Generally, courts "compare how creditors fare inside, as opposed to outside, bankruptcy." *In re Capra*, 614 B.R. 291,

[6] Dismissal or conversion under section 1112 is a matter which arises under the Bankruptcy Code, and examination under Bankruptcy Rule 2004 is a matter arising in a bankruptcy case. As such they are both core proceedings within the Court's jurisdiction. 28 U.S.C. § 1334(b), 28 U.S.C. §§157(b)(1), (b)(2)(A), (O). *See, also, e.g., In re Argon Credit, LLC*, 596 B.R. 882, 888 (Bankr. N.D. Ill. 2019) (court "unquestionably had subject matter jurisdiction to issue" order under Rule 2004) (citing *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 622 (Bankr. D. Del. 2016)). As matters that "stem[] from the bankruptcy itself," they are within this Court's constitutional authority to enter final orders. *See, e.g.*, *Rabo Agrifinance LLC v. Solt (In re Solt)*, No. 23-96003, 2023 Bankr. LEXIS 3006, at *2 (Bankr. N.D. Ill. Dec. 20, 2023); *In re Yotis*, 521 B.R. 625, 631 (Bankr. N.D. Ill. 2014) (*citing Stern v. Marshall*, 564 U.S. 462, 499 (2011)); *In re Millennium Lab Holdings*, 562 B.R. at 622 ("Rule 2004 is a rule of *bankruptcy* procedure that does not exist 'independent of a bankruptcy environment'" and thus "by its nature, and not the particular factual circumstance, could arise only in the context of a bankruptcy case").

297 (Bankr. N.D. Ill. 2020) (citing *In re Green Box*, 579 B.R. at 511). A "key question . . . is 'what assets would be available for a chapter 7 trustee to liquidate and administer for the benefit of unsecured creditors if this case were converted?'" *Id.* (quoting *Aurora Memory Care, LLC*, 589 B.R. 631, 643 (Bankr. N.D. Ill. 2018)).

A bankruptcy court's jurisdiction is "as a practical matter, 'sharply reduced' after it confirms the plan," though "it still retains jurisdiction to 'protect the confirmation order, prevent interference with the execution of the plan, and otherwise aid in the plan's operation.'" *Glaser v. Superior Silica Sands*, LLC, No. 22-cv-99-jdp, 2023 U.S. Dist. LEXIS 17508, at *10-11 (W.D. Wis. Feb. 2, 2023) (quoting *In re Kmart Corp.*, 359 B.R. 189, 195 (Bankr. N.D. Ill. 2005)). Post-confirmation, generally the "exercise of such jurisdiction is appropriate only to ensure that reorganization plans are implemented and to protect estate assets devoted to implement the confirmed plan." *Id. See also Napleton Enters., LLC v. Michael Bahary & Steven Bahary P'ship,* No. 15 C 3146, 2016 U.S. Dist. LEXIS 26253, at *20 (N.D. Ill. Mar. 1, 2016) (citing *Cytomedix, Inc. v. Perfusion Partners & Assocs., Inc.*, 243 F. Supp. 2d 786, 789-90 (N.D. Ill. 2003)). This is particularly the case where "all property and assets of the debtors' estates vested in the reorganized debtors." *Id.* As the Seventh Circuit explained:

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. Formerly a ward of the court, the debtor is emancipated by the plan of reorganization.

*Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991). In the context of a motion to reopen a chapter 11 case after confirmation and entry of a final decree, courts have cautioned that "bankruptcy courts do 'not have exclusive jurisdiction over issues stemming from a post-confirmation default' and the 'call for exercising concurrent jurisdiction is increasingly tenuous as time passes after confirmation.'" *In re T&A Holdings, LLC*, No. 11-81443, 2016 Bankr. LEXIS 3905, at *18 (Bankr. N.D. Ill. Nov. 2, 2016) (quoting *In re Canal St. Ltd. P'ship.*, 260 B.R. 460, 462 (Bankr. D. Minn. 2001)).

Where the confirmed plan vests all property in the reorganized debtor and in the absence of plan provisions otherwise, "once property has vested in the Debtor, conversion will not revest that property in the estate." *In re T.S.P. Indus., Inc.*, 117 B.R. 375, 378 (Bankr. N.D. Ill. 1990). *See also, e.g.*, *In re Akamai Physics, Inc.*, No. 20-12297-t11, 2022 Bankr. LEXIS 1089, at *13-14 (Bankr. D.N.M. Apr. 21, 2022). In *T.S.P. Indus.*, the court dismissed rather than converted the case because the U.S. Trustee had not identified likely assets that a chapter 7 trustee could administer or distribute to creditors. 117 B.R. at 379 ("Conversion of this case would not be in the best interests of the creditors because the chapter 7 trustee would not have any assets to distribute to the creditors."). As Judge Thuma observed in *Akamai*, in "most standard chapter 11 cases with confirmed plans of reorganization, neither conversion nor dismissal materially benefits creditors. Instead, a creditor's remedy is to sue the debtor in state court to enforce the creditor's rights under the chapter 11 plan." 2022 Bankr. LEXIS 1089, at *14.

KLC notes that the Ninth Circuit has held that at least in some situations, property that vested in a reorganized debtor on confirmation may revest in the estate upon conversion to chapter 7. *Pioneer*, 264 F.3d at 807. Such may be the case if the chapter 11 plan expressly provides for revesting after confirmation. But the Plan in this case does not. The *Pioneer* court does suggest that even in the absence of such language, property might revest on conversion if the plan "(1) contains explicit provisions regarding the distribution of liquidation proceeds to the investors, the plan's primary beneficiaries; and (2) gives the bankruptcy court broad powers to oversee implementation of the plan." *Id.* But the Seventh Circuit has not adopted this reasoning. In any case, *Pioneer*'s holding must be read in light of the narrow circumstances it addressed. *Pioneer* found that the "bankruptcy court did not abuse its discretion when it concluded that there was cause to convert to Chapter 7" – it did not *mandate* conversion every time a plan or confirmation order contains boilerplate retention of jurisdiction language. *Id.* at 808.

Moreover, *Pioneer* involved a plan of liquidation that created "an independent liquidating corporation 'formed in a manner to implement and fulfill the purposes of the Plan.'" 264 F.3d at 804-05. The liquidating trust was more of a creature of bankruptcy than an operating entity free, as the Seventh Circuit suggested in *Pettibone*, to "go about its business without further supervision or approval" by the bankruptcy court. Here, while the Plan contemplated that the Reorganized Debtor will sell certain real property, it also contemplated that the Reorganized Debtor would continue to operate other gas stations and convenience stores, going about its

business without further approval, generating income for payments to its creditors and ultimately profits to itself. KLC has not shown any provision for or even likelihood that any vested assets would revest in the estate in the event of conversion to chapter 7. Nor does it present any reasonable likelihood – as opposed to speculation – that there are other significant assets to administer.

KLC also seems to suggest a belief that Mr. Buck or DMG violated their fiduciary duties to either the Reorganized Debtor or to KLC. (*See, e.g.*, Rule 2004 Motion, ¶ 43 (arguing plan administrator in *Pioneer* "had fiduciary duty to account to its investors as do Buck and DMG have a fiduciary duty to account to KLC in the present case.")) But KLC does not explain how a chapter 7 trustee would possess the authority to pursue such claims. The vesting provisions of the confirmed Plan vested not only traditional assets in the Reorganized Debtor, but broadly vested "All Causes of Action that are not otherwise compromised, settled, released or waived pursuant to the terms of this Plan," specifically including "all Causes of Action of the debtors against any Person for the recovery of preferences, fraudulent transfers or any other actions under chapter 5 of the Code that arose on or after the Petition Date" and "include without limitation any derivative action that any party may have as a right derivative of or from the Debtors." (ECF No. 306, § 7.12.)

KLC is the only creditor or party in interest suggesting that the interest of creditors and the estate would be better served by conversion to chapter 7. It is well recognized in the Seventh Circuit, however, that "one of the fundamental aspects of bankruptcy's nature [is] that bankruptcy is a collective process." *In re LLC*

*1 07ch12487*, 608 B.R. 830, 846 (Bankr. N.D. Ill. 2019) (citing *Owens v. LVNV Funding, LLC*, 832 F.3d 726, 732 (7th Cir. 2016); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1194 (7th Cir. 1989)).

The collective lack of interest in proceeding in chapter 7 here is more than palpable and KLC has not shown why a chapter 7 trustee is likely to take up the cause KLC proposes. Of course, it could choose to go it alone. To the extent that KLC has causes of action against the Reorganized Debtor, it has not shown that it is foreclosed from pursuing them if the case is dismissed, or that conversion would better serve creditors and the estate. As noted by the court in *Green Box*:

> a motion to convert should not be "used as a pretext for a fishing expedition, especially when the lake looks so barren. The mere possibility that a claim might be found is not reason enough to convert a case, appoint a trustee and incur administrative expenses that will almost certainly never be paid. That result would not be in the best interests of creditors or the estate."

579 B.R. at 512 (quoting In re *T.S.P. Indus.,* 120 B.R. at 111).

KLC suggests in its Rule 2004 Motion that it needs discovery to identify potential assets or claims against the Reorganized Debtor, DMG or Buck, and asks to delay ruling on the Motion to Dismiss. But Congress has indicated that motions under section 1112 should be ruled upon expeditiously. Section 1112(b)(3) provides that the court "shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph."

11 U.S.C. § 1112. To date, the U.S. Trustee has consented to the Court's continuances of its Motion to Dismiss, but the Bankruptcy Code does not permit the Court to continue the matter indefinitely while KLC pursues further information, particularly where KLC has not shown a likelihood that it will find causes of action that would support conversion. As noted above, even if KLC were able to discover breaches of the Plan by the Reorganized Debtor or breaches of fiduciary duties by its officers or agents, KLC has not shown why those causes of action could or would be pursued by a trustee if converted to chapter 7.

Accordingly, the U.S. Trustee's Motion to Dismiss will be granted, the case dismissed, and KLC's Rule 2004 Motion will be denied as moot.

A separate order will be entered concurrent with this Memorandum Decision.

Date: July 18, 2025

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge